INTERSTATE TEXTILE EQUIPMENT COMPANY, PLAINTIFF v. HARRY S. SWIMMER AND SWIMMER-GREENBERG INSURANCE AGENCY, INC., ORIGINAL DEFENDANTS AND AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY, ADDITIONAL DEFENDANT.

(Filed 20 March 1963.)

1. **Insurance § 2—**

An insurance broker may not maintain that the insurer was negligent in failing to renew insurance binders on the property of one of their customers, in accordance with the custom and course of dealings between the broker and insurer, when the evidence discloses that the broker wrote insurer that if coverage should be needed after a specified date the broker would notify insurer and that the broker did not notify the insurer.

2. **Insurance § 67—**

Where an insurance broker undertakes to provide continuous insurance coverage on property of a customer and fails to do so, the customer may elect to sue either for breach of the contract or for negligent failure to perform the duty imposed by the contract.

3. **Same—Instruction on liability of broker for negligent failure to provide insurance coverage held not prejudicial.**

In an action against an insurance broker for negligent failure of the broker to provide insurance coverage in accordance with the broker's undertaking, a charge to the effect that the burden was upon the plaintiff to establish first that there was a failure on the part of the broker to perform a legal duty owed to plaintiff and secondly that such breach of duty was the proximate cause or one of the proximate causes of injury, *held* not prejudicial in imposing upon the broker the absolute contractual standard of conduct instead of the standard of ordinary care, when prior to the instruction complained of the court instructed the jury categorically that the action was based on negligence and that defendant would be liable only for the failure to exercise ordinary care in the performance of some legal duty owed to plaintiff.

APPEAL by the original defendants from *Patton, J.*, December 3, 1962 Regular "B" Civil Term of MECKLENBURG.

This is a civil action to recover for a loss by fire on 8 March 1961 of textile machinery destroyed or damaged by said fire, which machinery had been stored in a warehouse at 339 Main Street in the City of Wheeling, West Virginia.

The pertinent facts are as follows:

The plaintiff, Interstate Textile Equipment Company (hereinafter called plaintiff), a corporation organized and existing pursuant to the laws of the State of North Carolina, with its principal office located in Charlotte, is engaged in buying and selling used textile machinery.

Defendant Swimmer-Greenberg Insurance Agency, Inc. (hereinafter called Swimmer-Greenberg), is an insurance agency located in Charlotte, North Carolina, which acts as local agent for various fire, casualty and other insurance companies, one of which is the additional defendant American Manufacturers Mutual Insurance Company (hereinafter called American Manufacturers). Defendant Harry S. Swimmer is president of Swimmer-Greenberg and is a licensed insurance agent in North Carolina.

Swimmer-Greenberg and Harry S. Swimmer have been handling plaintiff's insurance coverage for approximately five years and have placed coverage for plaintiff's equipment with American Manufacturers. Harry S. Swimmer, individually and as agent for Swimmer-Greenberg, supervised the handling of insurance coverage at Wheeling, West Virginia, by thirty-day binders. Mr. Swimmer selected this method of binders in his own discretion and the plaintiff did not suggest how to handle this insurance coverage.

On or about 20 September 1960 the plaintiff requested defendant Swimmer to cover its equipment in Wheeling, West Virginia, with fire and extended coverage insurance in the sum of $50,000. Mr. Swimmer placed this coverage with American Manufacturers and a thirty-day binder effective 20 September 1960 was issued. When the original coverage was requested, American Manufacturers was told the coverage would run for approximately four months. Thereafter, at the request of Mr. Swimmer, additional binders were issued for the same amount of coverage and for thirty-day periods, the last one expiring 20 December 1960.

In the meantime, letters pertaining to the coverage were written by the original defendants to American Manufacturers and by the additional defendant to the original defendants. On 14 November 1960 American Manufacturers wrote to the original defendants with reference to the plaintiff's West Virginia coverage as follows:

"The binder in the amount of $50,000. on Machines and Equipment at the above location expired on October 20, 1960.

"Since I have received no word from you concerning the renewal of this Binder, I assume that you have either made arrangements to place this coverage elsewhere or that the property has been sold making it unnecessary to provide coverage. Therefore, I am closing my file and am having the charge for this binder entered on your account."

On 22 November 1960 the original defendants replied to the foregoing letter as follows:

"I refer to your letter of November 14, in regard to the above binder coverage. Please accept our apoligies for not having contacted you sooner.

"We wish this binder to remain in effect for another month in the amount of $50,000. If coverage is needed after the 20th of December, we will notify you."

On 2 December 1960 the original defendants wrote to the office of the additional defendant with respect to plaintiff's coverage at Fall River, Massachusetts, and the Wheeling, West Virginia coverage as follows:

"If this has not already been done, please discontinue the coverage for the above insured at the Fall River Massachusetts location and reduce the amount to $25,000 at the West Virginia location."

Mr. Swimmer, an adverse witness for the plaintiff, *inter alia*, testified: "Normally we could issue policies of insurance and binders from our office. In this instance we could not issue policies or binders from our office since this was out of State property in West Virginia.

"Interstate Textile Equipment Company did not tell me or direct me to handle this insurance coverage with binders. They left it up to me to handle it as I saw fit. I handle generally their entire insurance picture, and this is left pretty much in my discretion.

"As I stated, the plaintiff's representatives requested that I reduce the coverage to $25,000. They did not ask me to terminate the coverage completely. I never received any communication to do anything other than reduce this to $25,000 and allow it to continue in existence until they inform me otherwise. This was the general way I did business with them because of their buying and selling of textile equipment. When they bought anything like that it was just a temporary situation, this is the way we handled it. When they sold a part or sold all of it, they would notify me either to reduce or to terminate the binders."

The original defendants were invoiced for the binder which terminated on 20 December 1960, the invoice being received about 1 Febru-

ary 1961. Upon receipt of the invoice for the December binder, defendant Swimmer-Greenberg invoiced the plaintiff and the bill was paid. The original defendants attempted in no way to verify whether or not a binder was in effect or to obtain a binder from the additional defendant on plaintiff's equipment after 20 December 1960, and directed no correspondence pertaining to this coverage after 20 December 1960 until 8 March 1961, after the fire had occurred. The value of the equipment destroyed or damaged was in excess of $25,000.

At the conclusion of the original defendants' evidence the additional defendant demurred to the evidence and moved for judgment as of nonsuit on the cross action. The trial court reserved ruling on the motion until the conclusion of all the evidence, at which time it allowed the additional defendant's motion and granted judgment of involuntary nonsuit on the cross action against American Manufacturers.

The plaintiff's action against the original defendants was submitted to the jury and the jury returned a verdict for the plaintiff in the sum of $25,000.

The original defendants appealed to this Court from the judgment of nonsuit on the cross action and from the judgment entered for the plaintiff on the verdict, assigning error.

*Weinstein, Muilenburg, Waggoner & Bledsoe for plaintiff appellee.*
*Helms, Mulliss, McMillan & Johnston; Powers, Kaplan & Berger for additional defendant appellee.*
*Kennedy, Covington, Lobdell & Hickman for original defendant appellants.*

DENNY, C.J. The appellants assign as error the ruling of the court below in allowing the additional defendant's motion for judgment as of nonsuit on the appellants' cross action against the additional defendant American Manufacturers.

The appellants in their brief state that they do not contest the fact that, as between them and the plaintiff, they agreed to maintain the insurance on the plaintiff's West Virginia property in effect; nor do they contest the fact that American Manufacturers had no binder in effect at the time plaintiff's property was destroyed or damaged by fire. However, they do contend that in light of their prior dealings with American Manufacturers in almost identical circumstances, these appellants were not negligent in handling this insurance coverage; but if they were negligent, then in light of the course of past dealings between the original defendants and American Manufacturers, American Manufacturers was jointly and concurrently negligent.

In view of the fact that on 22 November 1960 the original defendants wrote the additional defendant American Manufacturers that *"If coverage is needed after the 20th of December, we will notify you,"* and since the evidence further shows that the original defendants never requested American Manufacturers to extend coverage beyond 20 December 1960, this assignment of error is without merit and is overruled. (Emphasis added.)

The appellants assign as error the following portions of the charge: "Now, in order for the plaintiff to prevail in an action for negligence, such person must establish; that is, the plaintiff must establish two things: First, that there was a failure on the part of the defendant to perform some legal duty which the defendant owed the plaintiff, and secondly, that such breach of duty; that is, such negligence, must be the proximate cause or one of the proximate causes of the plaintiff's injury. * * *

"The court instructs you that in every case involving negligence and, again, I emphasize to you that this is an action based on negligence, there are three elements which are essential to the existence of negligence. First, there must be the existence of the duty on the part of the defendant to protect the plaintiff from injury; second, the failure of the defendant to perform that duty; and third, the injury to the plaintiff must have arisen from such failure of the defendants; that is, as to the three elements, that the injury to the plaintiff must have been directly, that is, proximately caused by the neglect of the defendant. * * *

"(T)hen if you so find from the evidence and by its greater weight, then the defendants would, under the law, be guilty of what I have instructed you to be actionable negligence, composed of two elements, first, the failure to perform the duty which the defendants owed the plaintiff by the agreement, if you find by the greater weight of the evidence there was an agreement, and secondly, that such failure, such breach of duty was the proximate cause; that is, the producing cause or one of the producing causes of the plaintiff's injury; if you so find from the evidence and by its greater weight, then it would be your duty to answer the first issue 'yes'; that is, that the plaintiff has been damaged by the actionable negligence of the defendants."

The appellants contend that the foregoing instructions imposed on them an absolute contractual standard of conduct instead of the standard of ordinary care; that by omitting from the major portions of the charge any reference to the necessity of a failure to exercise

ordinary care, the trial court, in effect, converted this action into one for breach of contract.

We do not concur in this view. Immediately preceding the first portion of the charge assigned as error, the court gave the jury this instruction:

> "Ladies and Gentlemen, this first issue is based on the legal principle of negligence. Now, it is therefore my duty to instruct you as to what negligence means as applicable to this particular case. Negligence is the failure to exercise proper care in the performance of some legal duty which the defendants owed the plaintiff, growing out of the circumstances in which they were placed. It is the absence of that care which under the circumstances should be exercised as a duty to another; that is, a duty which the defendants might owe the plaintiff under the rule of the ordinary prudent person. As applicable to this case, again, means the failure to observe ordinary care for the protection of the interest of another person to whom that person owes an obligation."

In the case of *Elam v. Realty Co.*, 182 N.C. 599, 109 S.E. 632, 18 A.L.R. 1210, the failure of an insurance agent or broker to obtain the coverage requested and which he agreed to procure was involved. The action was for breach of contract, and the Court, *inter alia*, said: "It is very generally held that where an insurance agent or broker undertakes to procure a policy of insurance for another, affording protection against a designated risk, the law imposes upon him the duty, in the exercise of reasonable care, to perform the duty he has assumed, and within the amount of the proposed policy he may be held liable for the loss properly attributable to his negligent default. * * * It is ordinarily true that for breaches of duty involved in the contract of agency the principal may sue either for breach of contract for faithfulness or in tort for a breach of the duty imposed by the same." *Case v. Ewbanks*, 194 N.C. 775, 140 S.E. 709; *Meiselman v. Wicker*, 224 N.C. 417, 30 S.E. 2d 317; *Bank v. Bryan*, 240 N.C. 610, 83 S.E. 2d 485; 29 Am. Jur., Insurance, sections 163, 164, 165, page 561, *et seq*; 44 C.J.S., Insurance, section 172 (a), page 860, *et seq.*; Anno: Insurance Broker or Agent — Liability, 29 A.L.R. 2d 171.

In our opinion, the assignments of error to the foregoing portions of the charge present no prejudicial error. Hence, they are overruled.

Other assignments of error have been carefully examined and considered. However, we hold they are without merit and are therefore overruled.

This case was carefully tried by able counsel and before an excellent and competent judge whose charge to the jury when considered contextually is free from prejudicial error.

In the trial below, we find

No error.